# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

JAMES A. RUSSELL,

            Petitioner,           :    Case No. 3:15-cv-331

   - vs -                       District Judge Thomas M. Rose
                               Magistrate Judge Michael R. Merz

JASON BUNTING, Warden,
 MARION Correctional Institution,

                              :
            Respondent.

# REPORT AND RECOMMENDATIONS

This is a habeas corpus case brought *pro se* by Petitioner James Russell to obtain relief from his convictions in the Montgomery County Court of Common Pleas on charges of murder, aggravated robbery, tampering with evidence, and grand theft (Petition, ECF No. 1, PageID 1).

Russell pleads the following Grounds for Relief:

> **Ground One:** *Batson* violation of 5th and 14th Amendment.
>
> **Supporting Facts:** At Second voir dire, after first remand, the court refused to hear a batson challenge to juror #9 because in it's [sic] opinion, no pattern was established and 1 remaining african american was left in the pool of 50 potential jurors. The prosecutor stated the initial reasons were that juror #9 was young (31) and had no prior work history. She also stated she was not easily persuaded. This revelantion [sic] startled the state into excusing her. In the secon [sic] remand for a batson hearing, which was conducted not in front of the trial judge, and in front of a judge who was predisposed on the issue, the judge alwed [sic] allowed the state to offer new explanations as to why he moved to excuse juror #9. All of which violated this petitioner;'s constitutional rights to a fair trial and the due process of law guaranteed by the 5th and 14th amendments of the US Constitution.

1

**Ground Two:** Ineffective assistance of trial counsel violating the 6th, 5th, and 14th Amendments.

**Supporting Facts**: Counsel failed to properly prepare for trial, defeated his own suppression motion by stipulating that his client lacked standing to challenge the search sought by him to surpress, [sic] failed to object to irrelevant, inflammatory and prejudicial testimony elicited by the state, conducted ineffective and damaging cross-examination of the state's witnesses, failed to obect [sic]object to irrelevant, speculative, foundationless and unresponsive testimony, failed to complete his discovery duties and disclose exculpatory letters from the state's key witness to petitioner during and before trial to the state, failed to prepare for the Oct. 12, 2012 Batson Hearing. All of which and more violated this petitioner's constitutional rights under the 5th, 6th, and 14th Amendments.

**Ground Three:** Improper evidentiary rulings by the trial court in violation of the 5th and 14th Amendments.

**Supporting Facts:** Court rfused [sic] to grant surpression [sic] of tainted evidence gained from illegal search […] and seizure and the police's illegal and untimey search of the apartment which represented the crime […] scene, court refused to grant mistrial, made improper rulings on *Batson* claims at trial and hearings; refsed [sic] to allow proper cross examination, allow[ed] testimony without foundation [sic], and allowed nonresponsive and speculative testimony to reach the ju[ry] over objection, imposed maximum consecutive sentences and restitution, and appointed unfamiliar substitute counsel for second Batson hearing all of which violated this petitioner's constitutional rights under 5th and 14th amendments.

**Ground Four**: Prosecutorial misconduct in violation of the 5th and 14th Amendments.

**Supporting Facts**: The state improper improperly bolstered it's [sic] key witnesses credibility by illiciting [sic] testimony about her taking a polygraph, purposely eliminating 50% of the available african-american juroe [sic] pool, using tainted and illegally obtained evidence, changing it's [sic] position on Batson issues to suit the. . . .

**Ground Five:** Ineffective assistance of Appellate counsel in violation of the 5th, 6th and 14th amendments.

2

**Supporting Facts:** Appellate counsel failed to raise the strongest claims on appeal altering the outcome of the appeals as described in the numerous 26b applications filed in this case which violated this appellant's right to the effective assistance of counsel on appeal which results in a violation of this petitioner's 5th and 14th amendment rights.

**Ground Six:** Insufficient evidence in violation of the 5th and 14th amendments of the constitution.

**Supporting Facts**: Evidence exusted [sic] that showed someone else bought cleaning supplies the day of the murder to clean up the crime scene, the evidence, if it can be called that, collected from the scene was contaminated by many others and therefore unreliable, the plea bargain made with the petitioner's co-defendant is all the state had to rely on and it is highly suspect as the deal literally forced the codefendant to testify the way the state wanted.

**Ground Seven**: Cumulative error in violation of the 5th and 14th Amendments.

**Supporting Facts:** This case has more constitutional errors than 5 cases and the combined errors have risen to the level of a substantial violation of this petitioner's right to a fair trial and the due process of law in violation of the 5th and 14th amendments.

(Petition, ECF No. 1.)


**Procedural History**


Russell was indicted by the Montgomery County grand jury on charges of murder, aggravated robbery, tampering with evidence, grand theft, gross abuse of a corpse, and having weapons while under disability. After motion to suppress practice, the first five counts were tried to a jury which returned guilty verdicts. The weapons charge was tried to the court and Russell was convicted on that charge as well. The trial judge sentenced Russell to 40.5 years to life in prison and the conviction and sentence were affirmed on appeal. *State v. Russell*, 2007-

Ohio-137, 2007 Ohio App. LEXIS 129 (2nd Dist. Jan. 12, 2007), appellate jurisdiction declined, 114 Ohio St. 3d 1411 (2007).

On April 12, 2007, Russell filed an Application for Reopening under Ohio R. App. P. 26(B) which was granted and resulted in remand for a new trial. *State v. Russell,* 2008-Ohio-774, 2008 Ohio App. LEXIS 671 (2nd Dist. Feb. 22, 2008), appellate jurisdiction declined, 119 Ohio St. 3d 1409 (2008).

At a second trial, Russell was again convicted by the jury on all five non-weapons counts and sentenced as before.  On appeal, the Second District sustained Russell's assignment of error under *Batson v. Kentucky*, 476 U.S. 79 (1986), remanded for a hearing on that issue, and otherwise affirmed the conviction and sentence.  *State v. Russell*, 2010-Ohio-4765, 2010 Ohio App. LEXIS 4037 (2nd Dist. Oct. 1, 2010), appellate jurisdiction declined, 127 Ohio St. 3d 1502 (2011).

On remand, the trial court conducted a *Batson* hearing and found no violation.  On appeal, the Second District remanded again for completion of the *Batson* analysis.  *State v. Russell*, 2012-Ohio-422, 2012 Ohio App. LEXIS 340 (2nd Dist. Feb. 3, 2012), appellate jurisdiction declined, 132 Ohio St. 3d 1410 (2012).  On a second remand, the trial court again found no *Batson* violation.  This conclusion was affirmed on appeal.  *State v. Russell*, 2013-Ohio-5166, 2013 Ohio App. LEXIS 5383 (2nd Dist. Nov. 22, 2013), appellate jurisdiction declined, 138 Ohio St. 3d 1468 (2014).  Russell's subsequent motions to certify a conflict and to reopen the appeal for ineffective assistance of appellate counsel were unsuccessful and he filed his Petition in this Court on September 14, 2015.  The case became ripe for decision when Petitioner filed his Traverse on March 21, 2016 (ECF No. 19).

4

# ANALYSIS

**Ground One:  Racial Discrimination in the Exercise of a Peremptory Challenge**

In his First Ground for Relief, Russell claims that his conviction is tainted by the prosecutor's racial discrimination in the exercise of a peremptory challenge at the second trial, in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986).

The Respondent concedes the claim is preserved for merits review in this Court, but argues that the state courts' decision on the claim is entitled to deference under the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA")(Return of Writ, ECF No. 8, PageID 1455-64).

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court.  28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).

The Second District Court of Appeals decided this claim as follows:

> **III. *Batson*  Issue**
>
>  **[\*P16]**  In his second assignment of error, Russell claims that the trial court erred in overruling his *Batson* objection because the State's proffered race-neutral explanation was not credible.

 [*P17]  In *Batson*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69, the United States Supreme Court held that the Equal Protection Clause forbids the State from exercising a peremptory challenge to excuse a juror solely because of that juror's race. *See State v. Murphy*, 91 Ohio St.3d 516, 2001 Ohio 112, 747 N.E.2d 765 (2001) (applying *Batson*). "The Equal Protection Clause guarantees the defendant that the State will not exclude members of his race from the jury venire on account of race, or on the false assumption that members of his race as a group are not qualified to serve as jurors[.]" (Citations omitted.) *Batson*, 476 U.S. at 86.

 [*P18]  As stated above, a challenge to the State's use of a peremptory challenge under *Batson* involves a three-step analysis:

> * * * First, the defendant must set forth a prima facie case of discrimination. To establish a prima facie case of discrimination, "the defendant must point to facts and other relevant circumstances that are sufficient to raise an inference that the prosecutor used its peremptory challenge specifically to exclude the prospective juror on account of his race." *State v. Carver*, 2d Dist. Montgomery No. 21328, 2008-Ohio-4631, ¶ 48, citing *Batson*, 476 U.S. at 95.

> If the defendant establishes a prima facie case of discrimination, the prosecutor must state a race-neutral explanation for striking the juror in question. *State v. Lewis*, 2d Dist. Montgomery No. 23850, 2011-Ohio-1411, ¶ 76. A race-neutral explanation means one based on something other than the juror's race. *Hernandez v. New York*, 500 U.S. 352, 360, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Id*. "[T]he issue is the facial validity of the prosecutor's explanation." *Id*.

> If the prosecutor provides a race-neutral explanation, the trial court must determine whether the defendant met his burden of proving intentional discrimination or whether the prosecutor's explanation was a pretext. *Lewis*, ¶ 76. "A trial court's finding of no discriminatory intent will not be reversed on appeal unless clearly erroneous." *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, ¶ 61 (Citations omitted.)

*State v. Cunningham*, 2d Dist. Clark No. 10-CA-57, 2012-Ohio-2794, ¶ 36-38.

**[*P19]**  The prosecutor told the trial court at the October 4, 2012 hearing, that he had excused Juror #9 because he preferred "a juror who is older, more mature, seasoned and has a stable work history. I look for people that got employed, that or maybe worked and retired or worked and have been laid off." The prosecutor stated that Juror #9 "had the appearance of being very, very young" and, although she had gotten a license to be a massage therapist a year before, she had not worked. The prosecutor noted that defense counsel had commented to Juror #9 during voir dire that "I think you may be one of the youngest jurors."

 **[*P20]**  The prosecutor explained that his reasons were also based on a colloquy between defense counsel and Juror #9 about "if everyone else feels one way, but you feel strongly the other way, do you think you'll just give in to go with the other folks or do you think you'll stand up for your belief and explain why you felt a certain way?" At trial, the prosecutor had perceived defense counsel's question as "grooming a holdout." The prosecutor continued:

> But it was really what led on after that in a few sentences that to me was the linchpin because after [defense counsel] says do you think you'd stand up for your belief and explain why you felt a certain way, the juror said probably stand up for myself and explain why I feel that way. [Defense counsel] says all right. And then the juror says this. I'm not really easily persuaded. I think when I heard that, my ears perked up and at that point I had made a decision that I wanted to have that juror excused.

> * * *

> The State of Ohio, Your Honor, has the burden of proof in a homicide case. And the linchpin to my decision was her saying I'm not easily persuaded. At that point, Your Honor, my decision to ask that she be excused had absolutely nothing to do with race.

> * * *

7

[*P21] The prosecutor asked the trial court to consider other factors in determining whether his explanation was credible. The prosecutor pointed out that, earlier during voir dire, he "went into great detail about how prejudice plays no role in a criminal case. I talked to all the jurors about Lady Justice wears a blindfold and that color has absolutely nothing to do whether it's the victim's skin, defendant's skin or witness' skin as to a determination of a case. That it came from the evidence involved in the case and not the color of the players in the case. And I said that because and again you're judging my credibility because I have always felt that way in my 30 years of trying a case." The prosecutor noted that the court and the bar knew his reputation.

[*P22] The prosecutor also noted that three of the State's key witnesses in the case were African-American, including Hargrove and the downstairs neighbors. The prosecutor argued that "[i]t would be simply ludicrous to remove African-Americans from the jury simply because of race with that in mind." Moreover, the prosecutor indicated that another African-American was left on the jury.

[*P23] In response to the prosecutor's statements, defense counsel noted that Juror #9 was 31 years old, that other prospective jurors were not asked about their work history, and that Juror #9 had indicated that she would be open to the other jurors' point of view. Juror #9 had stated that she would be willing to change her mind if the other jurors' point of view was credible.

[*P24] The trial court concluded that the State articulated a race-neutral explanation for the peremptory challenge and that the explanation was credible and not a pretext for unconstitutional discrimination. In reaching these conclusions, the court found that "it was credible that the viewing the juror she may appear to be younger than the 31 years of age." The court further found persuasive

> the arguments of the State that when juror number 9 was questioned by Defense counsel, her statement that she was not easily persuaded and that the Prosecution reasonably concluded that the Defense was grooming a holdout. The Defense does raise further comments made by juror number 9 after that comment that she would be open to change her mind after that comment but again, the Court finds that the Prosecution reasoning that this was persuasive to them to remove this juror is credible.

8

The trial court also found "credible and reasonable" the fact that another African-American was on the jury and that several State's witnesses were African-American. The court found the prosecutor was, in general, well respected and that "his comments to the general voir dire that justice is blind, that race plays no part, is also some weight to the Court." The court stated that it was aware of the reputation of both counsel and that it felt comfortable in judging the credibility of the parties.

[*P25] As we stated in Russell V, we have no difficulty concluding that the reasons proffered by the prosecutor were race-neutral. We emphasize that '[t]he second step of [the *Batson*] process does not demand an explanation that is persuasive, or even plausible'; so long as the reason is not inherently discriminatory, it suffices." *Rice v. Collins*, 546 U.S. 333, 126 S.Ct. 969, 163 L.Ed.2d 824 (2006), quoting *Purkett v. Elem*, 514 U.S. 765, 767-768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995).

[*P26] We also cannot find that the trial court's conclusions that the prosecutor's statements were credible and not a pretext for discrimination were clearly erroneous. In resolving this third step, the United States Supreme Court has made clear that the ultimate issue is whether the trial court believed that the prosecutor exercised the peremptory challenge for a nondiscriminatory reason. "Credibility can be measured by, among other factors, the prosecutor's demeanor; by how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy." *Miller-El v. Cockrell*, 537 U.S. 322, 339, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). "If a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at *Batson'* s third step." *Miller-El v. Dretke*, 545 U.S. 231, 241, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005). However, as the Supreme Court noted in *Hernandez v. New York*, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991): "There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies 'peculiarly within a trial judge's province.'" *Id.* at 365, quoting *Wainwright v. Witt*, 469 U.S. 412, 428, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985).

[*P27] Here, the prosecutor's explanation for exercising the peremptory challenge was based primarily on Juror #9's youthful

9

appearance, her lack of work experience, and her answer to questions about how strongly she would maintain her viewpoint. Although Juror #9 was 31 years old, there is support in the voir dire transcript that she may have looked younger than her actual age. In addition, Juror #9 stated that she was a licensed massage therapist, but "I just got licensed last year, so I haven't really been doing it quite yet. But I got licensed last year." In response to questioning by defense counsel, Juror #9 had stated that she was not easily persuaded, but she'd be willing to change her mind if the other jurors' point of view was "credible." We do not find that the prosecutor's reasons for striking Juror #9 would have applied to other jurors who were not stricken. In addition, the trial court found the prosecutor's reason to be credible, and the court's conclusion is entitled to deference.

[*P28]  Russell claims that the prosecutor questioned Juror #9 differently than the other jurors, i.e., by not asking what she did in her spare time, by not asking about her work history, and by asking more questions about a lawsuit that Juror #9's brother may have been involved in. Upon reviewing the voir dire, we do not find material differences in the prosecutor's questioning of Juror #9 when compared to other prospective jurors.

[*P29]  Further, we note that an African-American was seated on the jury. The Ohio Supreme Court has said that "[t]he presence of one or more black persons on a jury certainly does not preclude a finding of discrimination, but 'the fact may be taken into account * * * as one that suggests that the government did not seek to rid the jury of persons [of a particular] race.'" (Emphasis in original.) *State v. White*, 85 Ohio St.3d 433, 438, 1999 Ohio 281, 709 N.E.2d 140 (1999), quoting *U.S. v. Young-Bey*, 893 F.2d 178, 180 (8th Cir.1990); *State v. Ferguson*, 2d Dist. Clark No. 2010 CA 1, 2011-Ohio-6801, ¶ 50. The trial court considered this factor in reaching its conclusion. In addition, the prosecutor had admonished the prospective jurors not to consider race as part of the case. The trial court could have reasonably considered those statements as evidence of the prosecutor's lack of racial motivation.

[*P30]  We do note that the prosecutor vouched for his personal attitude and that he has "always felt that way in my 30 years of trying a case." The prosecutor's self-evaluation is irrelevant. As stated in *Batson* regarding the second stage of the analysis, the prosecutor cannot rebut the defendant's prima facie case "merely by denying that he had a discriminatory motive or 'affirm[ing] [his] good faith in making individual selections.' If these general assertions were accepted as rebutting a defendant's prima

facie case, the Equal Protection Clause 'would be but a vain and illusory requirement.'" (Citations omitted.) *Batson*, 476 U.S. at 98, 106 S.Ct. 1712, 90 L.Ed.2d 69.

[*P31] Additionally, the court commented that the prosecutor was "well respected" and that it was "aware of the reputation of both counsel." All this may well be true, but the reputation of the attorneys was not on the record. See *Adkins v. Warden*, 710 F.3d 1241, 1254 (11th Cir.2013) (trial court's personal experience with and opinion about the reputation of the prosecutor was not a proper consideration at *Batson* third stage because it was non-record evidence which the defendant did not have an opportunity to rebut). Most judges have personal opinions or are aware of the reputations of the attorneys and judges involved in the cases that come before them, but these must not factor into the decision-making process.

[*P32] Nevertheless, the trial court's conclusion that the peremptory challenge was not a pretext for discrimination was not clearly erroneous. Accordingly, the trial court did not err in overruling Russell's *Batson* challenge.

[*P33] Russell's second assignment of error is overruled.

*State v. Russell*, 2013-Ohio-5155, 2013 Ohio App. LEXIS 5383 (2nd Dist. Nov. 22, 2013). As the last reasoned state court opinion on the merits, it is this opinion which the habeas court reviews. *Ylst v. Nunnemaker*, 501 U.S. 797 (1991).

Batson v. Kentucky, 476 U.S. 79 (1986), prohibits race-based peremptory challenges in a jury trial. A *Batson* error is never harmless, but rather is a structural error requiring reversal. *United States v. McFerron*, 163 F.3d 952 (6th Cir. 1998), relying on *Arizona v. Fulminante*, 499 U.S. 279 (1991). Judge Froelich's opinion for the Second District shows that court applied the correct standard for determining a *Batson* challenge, quoting extensively from that court's precedent, *State v. Cunningham*, which recognized the three-step process required by *Batson*. Russell points to nothing in Judge Froelich's opinion suggesting it was contrary to the relevant Supreme Court precedent, that is, that it applied the wrong legal standard.

A trial court must use a three-step process to evaluate a *Batson* claim. First, the opponent must make a *prima facie* showing that the proponent of the strike has exercised a peremptory challenge on the basis of race. A state criminal defendant can establish a *prima facie* case of purposeful racial discrimination in the selection of jurors solely by proof of the prosecutor's use of peremptory challenges to exclude members of the defendant's race. *Batson.* It is apparently undisputed that Russell and prospective Juror No. 9 are African-American, so Russell satisfied the first stage of the *Batson* test.

The burden of going forward then shifts at the second stage of the *Batson* analysis to the proponent of the peremptory challenge who must articulate a race-neutral reason for the challenge. Judge Froelich noted that the prosecutor had articulated a number of race-neutral reasons for excusing Juror No. 9: her youthful appearance, her lack of employment, and her apparently accepting attitude toward defense counsel questions aimed at "grooming a holdout." Russell has not suggested any way in which these preferences are inherently race-based nor has he suggested that the prosecutor accepted other non-African-American venire people who were youthful appearing, unemployed, or susceptible to holdout grooming. That is, he has not shown that the prosecutor's explanations were pretextual by pointing to the selection of non-African-American venire people who had the same characteristics he rejected in proposed Juror No. 9.

The prosecutor noted that one other African-American had been seated as a juror. That obviously cannot be conclusive – it is exclusion of any juror on a racial basis that counts; inclusion of another juror of the same minority at the excluded juror does not cure the structural error.. *United States v. Torres-Ramos*, 536 F.3d 542 (6th Cir. 2008). But it is not irrelevant either. As the court of appeals noted, it shows that the prosecutor was not determined to eliminate all African-Americans. The court of appeals also noted that the prosecutor spent some

time during voir dire admonishing the jury that it must not consider race in its decision. Although not determinative, this is also relevant to show the prosecutor's attitude.

Finally, at the third stage, the trial court must determine if the opponent has carried his burden of proving purposeful discrimination. *Purkett v. Elem,* 514 U.S. 765 (1995); *Hernandez v. New York*, 500 U.S. 352 (1991). These cases remind us that the burden of proving racial discrimination is on the opponent of the particular peremptory strike. A trial judge's conclusion that the challenge was race-neutral must be upheld unless it is clearly erroneous. *Hernandez*; *supra*; *United States v. Tucker*, 90 F.3d 1135, 1142 (6th Cir. 1996); *United States v. Peete*, 919 F.2d 1168, 1179 (6th Cir. 1990).

Russell sought a mistrial at one point because his original trial judge, Michael Hall, had been elected to the Second District Court of Appeals and the second *Batson* remand was heard by his successor, Dennis Adkins. However, it is not clearly established that a judge who is ruling on a *Batson* challenge must reject a demeanor-based explanation for the challenge unless the judge personally observed and recalls the aspect of the prospective juror's demeanor on which the challenge is based. *Thaler v. Haynes*, 559 U.S. 43 (2010). Therefore, even assuming there was some unexpressed demeanor component to the prosecutor's decision, there is no constitutional difficulty with the fact that a successor judge ultimately decided the *Batson* question.

Russell makes much of the fact that neither Judge Adkins nor the Court of Appeals reviewed the juror questionnaires and he seeks to have this Court obtain them and make them part of the record in this case. He asserts this failure violated the decisions of the Supreme Court in *Batson* and *Miller-El* to review the entire record in deciding *Batson* claim. But that requirement is not part of the holding of either *Batson* or *Miller-El.*

Russell has not explained to this Court's satisfaction the relevance of the questionnaires. The relevant facts for establishing a prima facie *Batson* claim are uncontested and Russell has pointed to nothing in the questionnaires that is not on the record and which would prove the prosecutor had a racial animus.

Finally, since neither Judge Adkins nor the Second District reviewed the questionnaires in deciding the *Batson* claim, this Court cannot consider them in deciding whether the Second District's decision was contrary to or an unreasonable application of *Batson* since we are limited to the record that was reviewed by the state courts. *Cullen v. Pinholster,* 563 U.S. 170 (2011).

Russell has not shown the Second District's decision was contrary to or an objectively unreasonable application of *Batson* or an unreasonable determination of the facts, given the evidence presented. Therefore his First Ground for Relief should be denied.

**Second Ground for Relief:  Ineffective assistance of trial counsel**

In his Second Ground for Relief, Russell asserts his trial counsel provided ineffective assistance in seven different ways.  The warden asserts that merit review of this Ground for Relief is barred by Russell's procedural default in presenting this claim to the Ohio courts.

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure forfeits his right to federal habeas corpus review. *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000)(citation omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87

Failure to raise a constitutional issue at all on direct appeal is subject to the cause and prejudice standard of *Wainwright*. *Murray*, 477 U.S. at 485; *Mapes v. Coyle,* 171 F.3d 408, 413 (6th Cir. 1999); *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir. 1994); *Leroy v. Marshall*, 757 F.2d 94, 97 (6th Cir.), *cert denied,* 474 U.S. 831 (1985). Failure to present an issue to the state supreme court on discretionary review constitutes procedural default. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)(citations omitted). "Even if the state court failed to reject a claim on a procedural ground, the petitioner is also in procedural default 'by failing to raise a claim in state court, and pursue that claim through the state's ordinary appellate procedures.'" *Thompson v. Bell*, 580 F.3d 423, 437 (6th Cir. 2009), citing *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006)(quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 846-7(1999)); see also *Deitz v. Money*, 391 F.3d 804, 808 (6th Cir. 2004) ("A federal court is also barred from hearing issues that could have been raised in the state courts, but were not[.]").

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d

345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord*

*Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir.

2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
> . . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); accord, *Hartman v. Bagley,* 492 F.3d 347,

357 (6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002).

All of Russell's ineffective assistance of trial counsel claims are based upon the record at

the second trial and thus could have been raised on direct appeal.  Under Ohio's criminal *res*

*judicata* doctrine, claims which could have been but were not raised on direct appeal are barred

from later consideration. *State v. Perry*, 10 Ohio St. 2d 175 (1967).  *See also State v. Cole*, 2

Ohio St. 3d 112 (1982); *State v. Duling,* 21 Ohio St. 2d 13 (1970).   The *Perry res judicata* rule

has been repeatedly upheld in the Sixth Circuit as an adequate and independent state rule. *Mason*

*v. Mitchell,* 320 F.3d 604, 628 (6th Cir. 2003); *Coleman v. Mitchell,* 268 F.3d 417, 429 (6th Cir.

2001); *Buell v. Mitchell*, 274 F.3d 337 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th

Cir. 2000), *cert. denied,* 531 U.S. 1082 (2001); *Rust v. Zent,* 17 F.3d 155, 160-61 (6th Cir. 1994); *Van Hook v. Anderson*, 127 F. Supp. 2d 899 (S.D. Ohio 2001).

The Warden asserts that all of Russell's ineffective assistance of trial counsel claims were direct appeal record claims. Russell responds that "[t]his . . .is absurd since the claims could not have been raised at that time." (Traverse, ECF No. 19, PageID 2582.)  Russell does not explain why this is so.  On appeal from the conviction in the second trial, he pled five assignments of error including, as Assignment of Error Three, that his trial attorney provided ineffective assistance of trial counsel when he failed to turn over Candace Hargrove's letters to the prosecutor and thus forfeited their use in cross-examination.  This is only one of the sub-claims in the Second Ground for Relief and Russell does not explain why it would have been "absurd" to raise the others.  He seems to argue that since the entire conviction was vacated "nothing should have been raised at that time."  *Id.*  Not so.  The Second District decided Russell's presented assignments of error and could have decided his other ineffective assistance of trial counsel sub-claims if he had also presented them.  Ohio law does not permit an appellant to withhold assignments of error that are ripe for some later appeal.  As to all the sub-claims of Ground Two besides the claim about the Hargrove letters, Russell has procedurally defaulted them by not presenting them on direct appeal.

Russell did present his attorney's failure to turn over the Hargrove letters on direct appeal and the Second District resolved it on the merits and found against Russell.  The Second District filed its Opinion on October 1, 2010 (See State Court Record, ECF No. 7-1, PageID 899.)  He thus had forty-five days to appeal to the Ohio Supreme Court and failed to do so.  The Sixth Circuit has held the filing deadline in the Ohio Supreme Court is an adequate and independent state ground of decision.  *Bonilla v. Hurley,* 370 F.3d 494, 497 (6th Cir. 2004).

Regarding his delayed appeal and procedural default from its failure to be timely filed, Russell claims that when acceptance of an appeal is discretionary, the procedural default doctrine is not applicable (Traverse, ECF No. 19, PageID 2583, citing *Hutchinson v. Bell*, 303 F.3d 720 (6th Cir. 2002).  *Hutchinson* does not stand for that proposition.  In *Hutchinson*, the Sixth Circuit held that Tennessee's due process exception to its statute of limitations "does not render Tennessee's procedural rules inadequate." *Id.*  at 739.  The decision in *Hutchinson* was not favorable to the petitioner's position and in any event analyzed a Tennessee rule.  Two years later in *Bonilla* the Sixth Circuit upheld the Ohio rule at issue here.

Therefore the Warden's procedural default defense on Ground Two is well taken and Russell's Second Ground for Relief should be dismissed.

**Ground Three:  Improper Evidentiary Rulings in the Trial Court**

In his Third Ground for Relief, Russell complains of eight rulings made by the trial court. Although he labels this claim as about "evidentiary" rulings, he in fact also includes improper handling of the *Batson* claim, refusal to declare a mistrial, imposing improper maximum consecutive sentences and restitution, and appointing unfamiliar substitute counsel.

The Warden asserts Russell's Third Ground for Relief is procedurally defaulted on the same basis as the Second Ground, to wit, that all the claims made are apparent on the record and were either not raised in the Second District or were defaulted by failure to timely appeal to the Ohio Supreme Court.

The *Batson* and mistrial claims are dealt with under Ground One above; the mistrial claim relates to Judge Hall's elevation to the Second District and is without merit as noted above.

Because Russell ultimately prevailed on the restitution question, it does not remain viable as a habeas corpus claim.

A review of Russell's Brief on appeal from the second trial reveals that he did raise a Confrontation Clause claim regarding limitations placed on the cross-examination of Candace Hargrove (Assignment of Error II), but did not raise his other claims made here in Ground Three (allowing testimony without foundation, allowing nonresponsive and speculative testimony, imposing maximum consecutive sentences). Because those claims were not raised on direct appeal, they are procedurally defaulted under Ohio's *res judicata* doctrine. The Confrontation Clause claim is defaulted by failure to timely appeal to the Ohio Supreme Court.

The claim that appointed counsel on remand was "unfamiliar substitute counsel" does not in itself state a claim for relief under the Constitution. An indigent criminal defendant is entitled to the effective assistance of counsel, not someone of his or her choice and not someone who is familiar with the case when initially appointed. Ineffective assistance of trial counsel was not raised as an assignment of error on appeal after the second *Batson* remand. (Brief, State Court Record, ECF No. 7-2, PageID 1221). Thus this claim is also procedurally defaulted.

Therefore Ground Three in its entirety should be dismissed as procedurally defaulted.


**Ground Four: Prosecutorial Misconduct**


In his Fourth Ground for Relief, Russell claims he was denied a fair trial by various acts of the prosecutor which he identifies as misconduct, to wit, improperly bolstering the credibility of key witnesses [the Hargrove/polygraph claim], purposely eliminating 50% of the African-Americans available in the jury pool, using illegally obtained evidence, and changing position on

the *Batson* issues.

The Warden asserts these claims are all procedurally defaulted because they were never raised on direct appeal (Return, ECF No. 8, PageID 1443).  What the Warden does not mention is that the Hargrove/polygraph claim arose in Russell's 26(B) Application to Reopen his direct appeal following his first trial (ECF No. 7, PageID 231-41), and that the state court of appeals later reversed the judgment of the trial court and remanded the case on other grounds with instructions to the trial court that the Hargrove/polygraph evidence not be admitted at retrial (ECF No. 71-1, PageID 525-50).   Neither party identifies any place in the record of Russell's retrial where the Hargrove/polygraph evidence was presented and the Court finds no such claim in his appeal from the judgment in his second trial.  Consequently, Russell's claim that the prosecutor engaged in misconduct in Russell's first trial by eliciting the Hargrove/polygraph evidence is a non-issue in these proceedings which attacks the judgment in his second trial.  This sub-claim should be dismissed as not cognizable in habeas corpus.

As for Russell's claim that the prosecutor in his second trial engaged in misconduct by peremptorily challenging "50% of the available african-american [sic] juroe [sic] pool," that is nothing more than a restatement of his First Ground for Relief, *supra*.  This sub-claim consequently suffers the same fate as that Ground for Relief and should be denied.

The other two Ground Four sub-claims of prosecutorial misconduct were omitted altogether on direct appeal, either on the first pass or the reopened appeal and are therefore procedurally defaulted.

Ground Four should therefore be dismissed.


**Ground Five: Ineffective assistance of appellate counsel**

In his Fifth Ground for Relief, Russell asserts he received ineffective assistance of appellate counsel when counsel "failed to raise the strongest claims on appeal. . ." (Petition, ECF No. 1, PageID 14). In the Return, Respondent noted the vagueness of this claim and objected that "it is simply impossible to ascertain from Russell's Petition which of his counsel(s) he claims was ineffective and during which appeals." (Return, ECF No. 8, PageID 1446). In his Traverse, Russell alsofails to specify which appellate counsel failed to raise which claims on which appellate occasion, merely averring "there are numerous appellate decisions from the many 26(b)'s and appeals." (Traverse, ECF No. 19, PageID 2589).

While it is true that an indigent criminal defendant is entitled to the effective assistance of counsel on appeal of right, Russell's Ground Five, given the number of appeals in this case, is too vague to adjudicate. Ground Five should therefore be dismissed for failure to state a claim upon which habeas corpus relief can be granted.

**Ground Six: Insufficient Evidence**

In his Sixth Ground for Relief, Russell claims he was convicted on insufficient evidence. The Warden objects that this Ground for Relief is also barred by Russell's procedural default in failing to present it on direct appeal after the second trial.

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307 (1979); *In re Winship,* 397 U.S. 358 (1970); *Johnson v. Coyle,* 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved

beyond a reasonable doubt.  *In re Winship,* 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . .  This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset,* 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007).  This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991).

Upon examination of Russell's Brief on direct appeal from the second trial, the Court finds that no insufficiency of evidence claim was raised (State Court Record, ECF No. 7-1, PageID 726).  In the section of his Traverse devoted to this Ground Six, Russell argues the merits of the claim and does not point to any portion of the record where this claim was raised in the state courts (ECF No. 19, PageID 2590-91).

Cause and prejudice to excuse this default could be shown by proving it resulted from the ineffective assistance of appellate counsel.  Russell filed a Delayed Application to Reopen under App. R. 26(B), but this is not one of the omitted assignments Russell raised (State Court Record, ECF No. 7-2, PageID 1185-93).  Before ineffective assistance of appellate counsel can be used to excuse a procedural default on appeal, the claim must first be submitted to the state courts for resolution.  *Edwards v. Carpenter*, 529 U.S. 446 (2000).  Because Russell never submitted an ineffective assistance of appellate counsel claim regarding omission of the insufficiency of evidence claim to the Ohio courts, he cannot now rely on it to excuse omission of that claim on direct appeal.

Ground Six for Relief should therefore be dismissed with prejudice.

**Ground Seven:  Cumulative Error**

In Ground Seven Russell claims the combined errors in the Ohio courts should be accumulated and relief granted on that basis.  Post-AEDPA, that claim is not cognizable in habeas corpus.  *Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011), *cert. denied,* 132 S.Ct. 2751 (2011), *citing Moore v. Parker,* 425 F.3d 250, 256 (6th Cir. 2005), *cert. denied sub nom. Moore v. Simpson,* 549 U.S. 1027 (2006).   Ground Seven should therefore be dismissed.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition herein be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

March 25, 2016.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).