IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

JAMES A. RUSSELL,

        Petitioner,              :        Case No. 3:15-cv-331

  - vs -                              District Judge  Thomas M. Rose
                                            Magistrate Judge Michael R. Merz

JASON BUNTING, Warden,
 Marion Correctional Institution,

                                        :

        Respondent.

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS

This habeas corpus case under 28 U.S.C. § 2254 is before the Court on Petitioner's Objections (ECF No. 22) to the Magistrate Judge's Report and Recommendations (the "Report," ECF No. 20) recommending that the Petition be dismissed with prejudice.  Judge Rose has recommitted the matter for reconsideration in light of the Objections (Recommittal Order, ECF No. 23).

Russell pled seven grounds for relief in his Petition and the Report recommends dismissal of all of them.  Russell objects on each ground and his Objections will be dealt with seriatim in the order they appear in the Objections.

**Ground One: Racial Discrimination in the Exercise of a Peremptory Challenge**

In his First Ground for Relief, Russell claims that his conviction is tainted by the prosecutor's racial discrimination in the exercise of a peremptory challenge at the second trial, in

violation of *Batson v. Kentucky,* 476 U.S. 79 (1986). This claim was decided on the merits by the Second District Court of Appeals. *State v. Russell,* 2013-Ohio-5166, 2013 Ohio App. LEXIS 5383 (2nd Dist. Nov. 22, 2013). Judge Froelich's opinion on the *Batson* issue is quoted at length in the Report (ECF No. 20, PageID 2601-07). The Report concluded the Second District's decision was neither contrary to nor an objectively unreasonable application of *Batson* (ECF No. 20, PageID 2610).

In reaching that conclusion, the Report held that the cited Second District opinion was the last reasoned state court decision on the merits of Russell's *Batson* claim and thus the decision to be reviewed in habeas (Report, ECF No. 20, PageID 2607, citing *Ylst v. Nunnemaker*, 501 U.S. 797 (1991)).

Russell asserts that *Ylst* is not applicable and this Court should have analyzed all three Second District opinions on the *Batson* claim (Objections, ECF No. 22, PageID 2624). Russell does not explain what it is that he wants this Court to review in the prior Second District opinions, both of which were favorable to him on the *Batson* question, although they resulted in remands. In any event, *Ylst* is clear that it is the last reasoned state court decision on an issue that the federal habeas court is to review.

Russell objects (ECF No. 22, PageID 2624) to the statement in the Report that "Russell points to nothing in Judge Froelich's opinion suggesting it was contrary to the relevant Supreme Court precedent, that is, that it applied the wrong legal standard." Russell acknowledges Judge Froelich cited the correct standard from *Batson*, but claims it was unreasonably applied to the facts of this case. *Id.* at PageID 2625.

The person who is the subject of the *Batson* claim was Juror No. 9. At the ultimate hearing on the issue on October 4, 2012, one of the reasons the prosecutor gave for striking her

2

was she appeared to be "very, very young…" Russell points out that Juror No. 9 was in fact 31 years old and this fact was known to the prosecutor from the jury questionnaire. The prosecutor did not explain why a youthful appearance was meaningful to him and there is no record from which this Court can judge the accuracy of his observation. Plainly, however, "youthful appearance" is not a code word for discrimination against African-Americans.

Russell notes that his attorney pointed out on remand that the prosecutor never asked Juror No. 9 any questions about her age. He says this shows the "youthful appearance" claim was pretextual, citing *Miller-El v. Dretke,* 545 U.S. 231, 244 (2005), and claims the Second District's decision "is an unreasonable application of the facts in **Miller-El**." (ECF No. 22, PageID 2626.) In *Miller-El*, the Supreme Court noted that the prosecutor had struck ten out of eleven African-American prospective jurors, allegedly for their ambivalence about or opposition to the death penalty.[1] The Supreme Court found that the cumulative evidence of prosecution tactics clearly raised the inference that the strikes were discriminatory. Happenstance was an unlikely explanation for striking 91% of the eligible African-American venire members. The Court also noted that prospective white jurors had not been asked similar questions about their views and this particular prosecutor's office (Dallas County, Texas) had a history of use of peremptory strikes against African-Americans.

The facts of *Miller-El* are not parallel to those in this case. Juror No. 9 was one of two prospective African-American jurors, the other of whom served. The black venire members in *Miller-El* were asked their views on the death penalty while whites were not. "Youthful appearance" does not turn on answers to questions. Furthermore, there is no evidence that there were "youthful appearing" white venire persons who were accepted.

The prosecutor's next purportedly race neutral explanation was that he looks for persons

---

[1] *Miller-El* was a capital case.

3

with a "stable work history."  Voir dire revealed that Juror No. 9 had gotten a license as a massage therapist about a year before trial but had not worked in that capacity.  Russell admits that the prosecutor asked "many of the white juror's [sic] that made it into the jury box about there [sic] work history – in many different ways.  He asked Juror 9, none!" (Objections, ECF No. 22, PageID 2626.)  However, on the very next page of the Objections, he admits that the prosecutor asked if Juror No. 9 had a particular occupation and elicited the response that she was a licensed massage therapist but had not worked at that profession (T.p., ECF No. 16-3, PageID 146-48).

Russell makes much of the fact that the prosecutor asked other prospective jurors about their prior work experience, but did not ask that question of Juror No. 9.  That again is hardly probative of racial animus.  If she appeared quite young and was not working at what she trained for, it would have made sense not to inquire about prior employment, whereas the actual employment of persons who had worked might provide information about jobs that might have given them an attitude about the case.

The Supreme Court's *Batson* jurisprudence does not require that a prosecutor in the time-constrained context of voir dire conduct a mini-employment interview and ask all prospective jurors the same lengthy set of questions.  Busy trial judges in felony courts are unlikely to tolerate that.  The question is not whether all prospective jurors were asked the same questions, but whether variation among questions asked is probative of discriminatory animus.  We of course review the Second District's decision with deference under the AEDPA, but even if we were conducting *de novo* review, the Court would not find the "youthful appearance" or lack of work history in the profession for which Juror No. 9 trained probative of racial animus.

The third reason the prosecutor gave was that Juror No. 9 said she was not easily

4

persuaded and the prosecutor felt defense counsel might have been grooming her as a possible holdout.  Russell criticizes the Report for not noting the lengthy opinion of Judge Mary Donovan which was critical of this rationale.  Judge Donovan's concurrence is consistent with her long service as a public defender before becoming a judge and quite appropriately points out that jurors are not supposed to be easily persuaded – the constitutional requirement of proof beyond a reasonable doubt requires that.  But Judge Donovan's opinion is a concurrence, not a dissent.  She found the other two explanations – youthful appearance and lack of employment history – sufficient.  And she also did not argue that the explanation was somehow a pretext for race discrimination.

Russell objects that the Magistrate Judge ignored his claim that the trial court and court of appeals all lied about reviewing the jury questionnaires.  Russell attempts to prove this strong accusation by his interpretations of various items in the Common Pleas docket (Objections, ECF No. 22, PageID 2630-33).  As a remedy, Russell seeks an evidentiary hearing at which this Court would assess whether the prosecutor's explanations are credible or not.  This is possible, Russell claims, because no AEDPA deference should be given to the Second District's decision.

The Magistrate Judge disagrees.  The Second District signaled its appreciation of the importance of the *Batson* issue by reopening the appeal and remanding the case twice to ensure that the *Batson* analysis was complete.  Assuming that Juror No. 9's questionnaire says what Russell claims – that she was thirty-one years old at the time of voir dire – that does not change the ultimate analysis or the obligation of this Court to give AEDPA deference because Russell has not proved that the Second District's conclusion is an unreasonable determination of the facts in light of the evidence.

**Ground Two:  Ineffective Assistance of Trial Counsel**

In his Second Ground for Relief, Russell asserted his trial counsel provided ineffective assistance in seven different ways.  The claim reads verbatim as follows:

> Counsel failed [1] to properly prepare for trial, [2] defeated his own suppression motion by stipulating that his client lacked standing to challenge the search sought by him to surpress, [sic] [3] failed to object to irrelevant, inflammatory and prejudicial testimony elicited by the state, [4] conducted ineffective and damaging cross-examination of the state's witnesses, [5] failed to obect [sic]object to irrelevant, speculative, foundationless and unresponsive testimony, [6] failed to complete his discovery duties and disclose exculpatory letters from the state's key witness to petitioner during and before trial to the state, [7] failed to prepare for the Oct. 12, 2012 Batson Hearing. All of which and more violated this petitioner's constitutional rights under the 5th, 6th, and 14th Amendments.

(Petition, ECF No. 1, PageID 9.  Bracketed numbers added to assist analysis.)

The Report recommended accepting the Warden's procedural default defense to this claim (Report, ECF No. 20, PageID 2610-14).  Six of the seven claims were found to be based on the record at the second trial but not raised on direct appeal.  The sub-claim relating to letters from Candace Hargrove was raised on direct appeal, but decided against Russell who then forfeited it, the Report found, by not timely filing his appeal to the Ohio Supreme Court. *Id.*

Russell objects that "[t]his claim and the subclaims were clearly outlined in the traverse but apparently ignored by the magistrate.  The petitioner objects to the magistrate's apparent rubber-stamping of the respondent's position which is both illogical and untrue." (ECF No. 22, PageID 2643.)

6

To analyze the Objections properly, it is important to have the complex procedural history in mind. The murder of Philip Troutwine occurred September 1, 2004. Russell left town with the woman in whose apartment the murder had occurred, Candace Hargrove. He was arrested in Los Angeles in October, and then returned to Dayton, where he had been indicted. Prior to trial he filed a motion to suppress which he lost; presumably his ineffective assistance of trial counsel subclaim relating to counsel's stipulating lack of standing refers to this motion. Russell was found guilty by a jury and separately by the judge on his weapons under disability count. He was then sentenced in January 2006 (Termination Entry, State Court Record, ECF No. 7, PageID 81).

Russell appealed from that judgment, raising ineffective assistance of trial counsel as his fourth assignment of error. The particular deficiencies of performance alleged were (1) failure to investigate and prepare, (2) failure to object to testimony regarding his relationship with Hargrove, (3) ineffective cross examination of five State's witnesses, (4) stipulating to the abandonment of Russell's apartment, (5) failure to object to the admission of certain testimony, and (6) failure to object to non-responsive testimony (Appellant's Brief, State Court Record, ECF No. 7, PageID 109-25). Russell lost on those claims, but exhausted them by appealing, unsuccessfully, to the Ohio Supreme Court.

However, Russell won a reopened appeal to the Second District. The Ohio App. R. 26(B) Application which was filed by the Ohio Public Defender on Russell's behalf, asserted five claims of ineffective assistance of appellate counsel (Application, State Court Record, ECF No. 7, PageID 232-33). The Second District granted reopening limited to the issues presented in the Application (Decision and Entry, State Court Record, ECF No. 7, PageID 302-05). The court eventually granted relief only on the first assignment of error. *State v. Russell*, 2008-Ohio-774

7

(2nd Dist. Feb. 22, 2008)(copy at State Court Record, ECF No. 7-1, PageID 525 *et seq*.)   Russell was then re-tried to a jury on Counts 1-5 of the Indictment and again convicted.  It is this judgment on which he is presently confined and from which he seeks relief.

Russell appealed from that judgment and again raised ineffective assistance of trial counsel, this time as his third assignment of error, complaining only of his trial attorney's failure to turn over in discovery letters Candace Hargrove wrote to him after the first trial (Appellant's Brief, State Court Record, ECF No. 7-1, PageID 726).  Russell lost on that assignment of error. *State v. Russell*, 2010-Ohio-4765 (2nd Dist. Oct. 1, 2010).  To preserve that claim for presentation in federal habeas, he was required to appeal to the Ohio Supreme Court not later than forty-five days after the appellate judgment, or by November 15, 2010.  He did not do so.  Instead, on November 23, 2010, he filed a notice of appeal and motion for leave to file a delayed appeal in the Ohio Supreme Court (State Court Record, ECF No. 7-2. PageID 936-37, 949).  The Ohio Supreme Court denied the motion (Entry, State Court Record, ECF No. 7-2, PageID 981).

It was based on this history that the Report recommended all claims of ineffective assistance of trial counsel made in Ground Two be dismissed for procedural default.  They are all claims based on the trial record.  Subclaims 1, 2, 3, 4, 5, and 7 were forfeited when they were not raised at all on direct appeal; sub-claim six was forfeited when Russell missed his appeal date in the Ohio Supreme Court.

Russell's first objection is that "the subclaim pertaining to either *Batson* hearing on remand in 2010 or 2012, as neither could have been raised in the direct appeal."  (Objections, ECF No. 22, PageID 2643.)  But Ground for Relief Two does not include a subclaim for ineffective assistance of trial counsel with respect to the *Batson* claim.

Russell continues that "[o]ther subclaims were raised in a timely 26(B) motion, and the

8

State court of appeals did not reject those claims on the basis now advanced by the magistrate." *Id.* The only claims which were, or legally can be, raised in a Rule 26(B) Application are claims of ineffective assistance of appellate counsel, not claims of ineffective assistance of trial counsel. An Ohio App. Rule 26(B) application preserves for habeas review only the ineffective assistance of appellate counsel arguments, not the underlying substantive arguments. *Wogenstahl v. Mitchell*, 668 F.3d 307, 338 (6th Cir. 2012), *citing Lott v. Coyle*, 261 F.3d 594, 612 (6th Cir. 2001).

Russell claims that "if underlying ineffective assistance of counsel claims have merit, then under the **Carrier** standard, any procedural default is excused." (Objections, ECF No. 22, PageID 2643.) Russell's presumed reference is to *Murray v. Carrier*, 477 U.S. 478 (1986), which held that ineffective assistance of counsel can excuse a procedural default, but also that the claim of excusing ineffective assistance of trial counsel must be presented to the state courts in the first instance. Those claims must be properly presented to the state courts and exhausted before they are available in federal habeas. *Edwards v. Carpenter*, 529 U.S. 446 (2000).

To excuse his failure to file on time in the Ohio Supreme Court, Russell relied on *Hutchison*[2] *v. Bell,* 303 F.3d 720 (6th Cir. 2002), for the proposition that when acceptance of an appeal is discretionary, the procedural default doctrine is inapplicable. The Report concluded

> *Hutchinson* [sic] does not stand for that proposition. In *Hutchinson*, the Sixth Circuit held that Tennessee's due process exception to its statute of limitations "does not render Tennessee's procedural rules inadequate." *Id.* at 739. The decision in *Hutchinson* [sic] was not favorable to the petitioner's position and in any event analyzed a Tennessee rule. Two years later in *Bonilla* the Sixth Circuit upheld the Ohio rule at issue here.

(Report, ECF No. 20, PageID 2614.)

Russell objects that *Hutchison* does indeed stand for the proposition for which he cited it

---

[2] Russell refers to the petitioner in that case as "Hutchinson," but the name in the reported opinion is "Hutchison."

9

(Objections, ECF No. 22, PageID 2643). *Hutchison* was a Tennessee capital habeas corpus case. Tennessee's postconviction process had a one-year statute of limitations provision. Hutchison missed that filing deadline for some of his claims under *Brady v. Maryland*, 373 U.S. 83 (1963), and included other *Brady* claims in a subsequent postconviction petition in violation of Tennessee's one-petition rule. The district court found the *Brady* claims had therefore been procedurally defaulted. Hutchison attacked both Tennessee rules, claiming

> that the one year statute of limitations and the one petition rule do not constitute "adequate and independent" state grounds to uphold the conviction. Specifically, he charges that the Tennessee courts make a case-by-case due process exception to these provisions for those prisoners who present a legal or factual predicate that arises after the expiration of the limitations period.

303 F.3d at 736-37. Applying the third prong of the analysis under *Maupin v. Smith,* 785 F.2d 135 (6th Cir. 1986), the *Hutchison* court found that Tennessee's due process exception to the statute of limitations did not prevent that rule from being "firmly established and regularly followed." It upheld the procedural default and noted that a habeas petitioner "must show more than 'an occasional act of grace by a state court in excusing or disregarding a state procedural rule' in order for a federal court to conclude that the state procedural rule is inadequate because inconsistently applied." *Id.* at 737. Having re-read *Hutchison*, the Magistrate Judge is still at a loss to understand why Russell believes it supports his position.

In any event, there is Sixth Circuit authority much more closely in point. In *Bonilla v. Hurley,* 370 F.3d 494, 497 (6th Cir. 2004), the Sixth Circuit held the Ohio rule at issue in this case -- the forty-five day time limit on appeal to Ohio Supreme Court prescribed by S. Ct. Prac. R. 7.01(A)(1) -- is an adequate and independent state ground of decision, not rendered inadequate by the availability of the motion for delayed appeal process.

In his next objection, Russell says "[i]t is difficult to believe that the magistrate is suggesting **MAUPIN** is no longer good law. . . "(ECF No. 22, PageID 2643).  The Report suggests nothing of the kind.

Russell chides the Magistrate Judge for ignoring "the case announcements for the day this petitioner's delayed appeal was ruled on by the Ohio Supreme Court." *Id.*  at PageID 2644.  Russell notes that two Justices dissented from denial of his motion.  *State v. Russell*, 127 Ohio St. 3d 1502 (2011).  Then he notes that roughly half of the delayed appeal motions decided the same day as his were granted and asks how the 45-day appeal deadline can be said to be firmly established and regularly followed in light of this fact (ECF No. 22, PageID 2644). The answer is that the Sixth Circuit says so in *Bonilla, supra*.

**Ground Five:  Ineffective Assistance of Appellate Counsel**

In his Fifth Ground for Relief, Russell claims he received ineffective assistance of appellate counsel in that appellate counsel "failed to raise the strongest claims on appeal altering the outcome of the appeals as described in numerous 26b applications filed in this case. . ." (Petition, ECF No. 1, PageID 14).

As to this claim, the Report reads:

> In his Fifth Ground for Relief, Russell asserts he received ineffective assistance of appellate counsel when counsel "failed to raise the strongest claims on appeal. . ." (Petition, ECF No. 1, PageID 14). In the Return, Respondent noted the vagueness of this claim and objected that "it is simply impossible to ascertain from Russell's Petition which of his counsel(s) he claims was ineffective and during which appeals." (Return, ECF No. 8, PageID 1446). In his Traverse, Russell also fails to specify which appellate counsel failed to raise which claims on which appellate occasion, merely averring "there are numerous appellate decisions from the many

11

> 26(b)'s and appeals." (Traverse, ECF No. 19, PageID 2589). . . .Ground Five should therefore be dismissed for failure to state a claim upon which habeas relief can be granted.

(ECF No. 20, PageID 2617.)

Now in his Objections Russell clarifies his intent. "First, there is nothing vague about the claim or subclaim in the petition or traverse. They are a reflection of the assignments of error in the 26(B) applications." In other words, Russell wishes to raise here, without pleading them explicitly, every claim of ineffective assistance of appellate counsel he made in any of his 26(B) applications. Neither the Petition nor the Traverse says that. The Magistrate Judge remains of the opinion that Russell did not plead them with sufficient specificity to allow the State to respond.

Nevertheless, as a *pro se* pleader, Russell is entitled to a liberal construction of his pleadings. The ineffective assistance of appellate counsel claims he made in his 26(B) applications are as follows:

**Application of April 12, 2007:** omitted assignments of error:

> 1) failing to raise as error the trial court's violating Mr. Russell'sSixth Amendment rights under Blakely v. Washington (2004), 542 U.S. 296, 124 S.Ct. 2531, when it imposed maximum consecutive sentences for every count of conviction;
>
> 2) failing to raise as error the trial court's imposing as part of Mr. Russell's sentence the burden of paying restitution in the amount of $15,498.25 without first considering Mr. Russell's present or future ability to pay, as required by R.C. 2929. l 9(B)(6);
>
> 3) failing to raise as error prosecutorial misconduct in the State's improper bolstering of the credibility of its key witness, Candace Hargrove, by eliciting testimony from her regarding her agreement to take a polygraph examination as part of her plea bargain, or by challenging that testimony as inadmissible under Evid. R. 403(B);

> 4) failing to assert ineffective assistance of trial counsel on the grounds that counsel failed to object to the sentencing errors and prosecutorial misconduct set forth in 1 through 3, above; and
>
> 5) failing to raise as error the court's overruling of Mr. Russell's motion for a mistrial on the grounds that the verdict form for the weapons disability charge was given to the jury, despite the court's assurances upon defense counsel's request that the form not be submitted to the jury.

(State Court Record, ECF No. 7, PageID 232-33.)  The Second District Court of Appeals granted a new trial on the fifth omitted assignment of error and found the other four moot in light of that decision, since Russell would get a new appeal if he lost on the second trial.  *State v. Russell*, 2008-Ohio-774 (2nd Dist. Feb. 22, 2008)(copy at State Court Record, ECF No. 7-1, PageID 525 *et seq*.) That decision is correct on the merits of the ineffective assistance of appellate counsel claims.  Since Russell is no longer confined and will never be confined on the judgment from the first trial, i.e., he is not in custody on that judgment, any opinion by this Court on whether the other four claims had merit would be beyond our jurisdiction.

**Delayed Application of May 16, 2012**, omitted assignments of error:

1. The trial court erred when it failed to merger [sic] counts one and two for sentencing purposes.

2. The trial court erred when it failed to merger [sic] counts TWO, THREE, and FOUR for sentencing purpose.

3. The trial court erred when it failed to consider Defendant's ability to pay court cost [sic].

(State Court Record, ECF No. 7-2, PageID 1185-93.)  The Second District denied the Delayed Application for Reopening on the ground that all of these new assignments of error were barred by the law of the case, since they all could have been raised on his prior appeal.  *State v. Russell*,

Case No. 24443 (2nd Dist. July 13, 2012)(copy at State Court Record, ECF No. 7-2, PageID 1204, et seq., *citing Beifuss v. Westerville Bd. Of Educ.,* 37 Ohio St. 3d 187 (1988). Russell offers no authority for the proposition that this decision is in error. The law of the case doctrine is well-recognized in both state and federal law. Its application here by the Second District is an adequate and independent ground of decision and thus bars habeas litigation of these claims.

**Application of February 21, 2014,** omitted assignments of error:

1. The courts committed a structural error when it appointed a substitute counsel for the defense.
2. The validity of a strike challenged under *Batson* must "stand or fall" on the plausibility of the explanation given for it at the time, not new post hoc justifications.
3. Appellant was deprived of effective assistance of trial counsel as guaranteed to him under the Sixth and Fourteenth Amendments of the United States Constitution, and comparable portions of the Ohio Constitution.
4. Ineffective Assistance Of Appellate Counsel [for failure to raise the first three assignments of error]

(State Court Record, ECF No. 7-3, PageID1344, et seq.) The Second District denied this Application on the merits, finding no colorable claim of ineffective assistance of appellate counsel. *State v. Russell,* C.A. Case No. 25467 (2nd Dist. May 6, 2014)(copy at State Court Record, ECF No. 7-3, PageID 1367, et seq.)

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the

14

United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).

Russell offers no argument as to why this decision is contrary to or an objectively unreasonable application of *Strickland v. Washington,* 466 U.S. 668 (1984), which provides the governing standard on ineffective assistance of appellate counsel claims. instead, he offers conclusory bromides such as "the sixth amendment requires more than just a warm body as counsel." (ECF No. 22, PageID 2645.)

Russell reminds the Court that one of the ineffective assistance of appellate counsel claims made is that appellate counsel failed to raise ineffective assistance of trial counsel in several respects. Russell seems to believe that raising ineffective assistance of trial counsel as an underlying claim in a 26(B) application preserves it for merit review. He writes "[l]astly the ineffective assistance of trial counsel [claim] was raised on this 26(B) and carried through with the rest of the claims to the Ohio Supreme Court." (Objections, ECF No. 22, PageID 2646.) As noted above, an Ohio App. Rule 26(B) application preserves for habeas review only the ineffective assistance of appellate counsel arguments, not the underlying substantive arguments. *Wogenstahl v. Mitchell*, 668 F.3d 307, 338 (6th Cir. 2012), *citing Lott v. Coyle*, 261 F.3d 594, 612 (6th Cir. 2001).

**Ground Three: Improper Evidentiary Rulings**

In his Third Ground for Relief, Russell complains of eight rulings made by the trial court. Although he labels this claim as about "evidentiary" rulings, he in fact also includes improper

handling of the *Batson* claim, refusal to declare a mistrial, imposing improper maximum consecutive sentences and restitution, and appointing unfamiliar substitute counsel.

The Magistrate Judge found this Ground for Relief procedurally defaulted on the same basis as Ground Two, to wit, that all the claims made are apparent on the record and were either not raised on direct appeal at all or not timely appealed to the Ohio Supreme Court (Report, ECF No. 20, PageID 2614, et seq.)

The Objections do not call for further analysis of Ground Three.

**Ground Four:  Prosecutorial Misconduct**

In his Fourth Ground for Relief, Russell claims he was denied a fair trial by various acts of the prosecutor which he identifies as misconduct, to wit, improperly bolstering the credibility of key witnesses [the Hargrove/polygraph claim], purposely eliminating 50% of the African-Americans available in the jury pool, using illegally obtained evidence, and changing position on the *Batson* issues.

While the Warden asserted procedural default as to this Ground for Relief, the Report separately analyzed the subclaims.  With respect to the Hargrove polygraph subclaim, the Report noted that it was only referred to in the first trial, the judgment from which was vacated.  That, in the Magistrate Judge's opinion made this a "non-issue in these proceedings which attacks [sic] the judgment in his second trial."  (Report, ECF No. 20, PageID 2616.)  Russell objects that "[h]ad this improper evidence not been illicited [sic] at the first trial, it cannot be said that the first jury would not have acquitted this petitioner.  But what is most improper is that the state's improper action, knowingly taken, still constitute [sic] prosecutorial misconduct." (Objections,

ECF No. 22, PageID 2648.)

Habeas corpus is only available to test whether a person is in custody pursuant to an unconstitutional judgment. At this point, because Russell is confined on the judgment from the second trial, that is the only judgment this Court can examine. Improper state conduct in the past which has not resulted in a judgment and sentence is no longer cognizable in habeas.

Russell also claims that the prosecutor committed misconduct in peremptorily striking Juror No. 9. The Report concluded this subclaim should be dismissed on the same basis as Ground for Relief One (Report, ECF No. 2616). Russell objects that the two claims are based on separate legal theories and refers the Court to cases on prosecutorial misconduct, including *Berger v. United States*, 295 U.S. 78, 88 (1935)(Sutherland, J.), and *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974). While the legal theories are in fact distinct, the test under *Batson* is whether the prosecutor has engaged in intentional racial discrimination in the exercise of a peremptory. If the habeas court determines, as is recommended with respect to Ground One, that there was no such discrimination, it was not prosecutorial misconduct to exercise the peremptory. Put another way, it is part of the prosecutor's job to exercise peremptory challenges. If it is alleged that he committed misconduct by engaging in intentional racial discrimination and it is found that he did not do so, there is no misconduct. Russell's characterization of this as a "one size fits all approach employed by the magistrate" misses the logic of this claim. Without an underlying *Batson* violation, there is no viable misconduct claim.

The remaining subclaims of Ground Four were found to be procedurally defaulted. Now Russell objects that this ignores the showing of excusing cause and prejudice (Objections, ECF No. 22, PageID 2648). For reasons given above, Russell's claim that he has shown excusing cause and prejudice is not well taken.

17

**Ground Six:  Insufficient Evidence**

In his Sixth Ground for Relief, Russell claims he was convicted on insufficient evidence. The Warden asserted that this Ground was procedurally defaulted by failure to raise it on direct appeal after the second trial.  The Magistrate Judge concluded this defense was well taken because there was no insufficiency of the evidence claim in the Appellant's Brief on the second trial.

Russell objects that he raised this claim in his first appeal and "exhausted the claim all the way to the Ohio Supreme Court."  (Objections, ECF No. 22, PageID 2649.)  While this is correct, it is irrelevant.  Russell is imprisoned on the judgment from the second trial, not the first, and it is only the constitutionality of the judgment on which a person is incarcerated that can be examined in habeas corpus.

**Ground Seven:  Cumulative Error**

In his Seventh Ground, Russell asserted that the cumulative errors made by the Ohio courts entitled him to relief.  The Report rejected that claim on the basis of cited Sixth Circuit precedent (Report, ECF No. 20, PageID 2619).

Russell objects that the cited precedent is not from the United States Supreme Court (ECF No. 22, PageID 2649).  While that is true, Russell points to no Supreme Court authority allowing accumulation of errors.  In the absence of Supreme Court precedent, this Court is bound to follow the Sixth Circuit.

Russell also relies on "Ohio law pursuant to **DeMARCO**" as precedent. *Id.* Russell offers no citation to a *DeMarco* case and the Magistrate Judge has been unable to find an Ohio case by that name with the holding Russell claims for the case. Even if such a precedent exists, it is federal constitutional law that is in issue in this case and the Court must follow Sixth Circuit precedent.

**Conclusion**

On the basis of the foregoing analysis, it is respectfully again recommended that the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion as to Grounds Two through Seven, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*. However, on May 23, 2016, the Supreme Court decided a *Batson* claim in *Foster v. Chatman*, 587 U.S. ___, 2016 U.S. LEXIS 3486 (2016), in which it found a violation after engaging in a fact-intensive review of the state court record. There are important distinctions between this case and *Foster*, but that decision persuades the Magistrate Judge that his conclusions about Russell's *Batson* claim would be debatable among reasonable jurists. It is therefore respectfully recommended that he be granted a certificate of appealability on Ground One.

June 9, 2016.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).